Jacob J. Schwartzwald, J.
In this action for a declaratory judgment instituted by members of the defendant union, plaintiffs move for an injunction pendente lite restraining the defendants Seeman Brothers, Inc., hereinafter referred to as Seeman, and Francis H. Leggett & Son, hereinafter referred to as Leggett, until the trial and determination of the action is had, from hiring any of the defendants numbered 10 through 103 (employees of Seeman) for the trucking of products sold or handled by the defendant Leggett, until all the plaintiffs have received employment; from hiring any independent truckmen who do not use the plaintiffs as drivers and helpers in the order of their seniority for the trucking of products bought, sold or handled by the defendant Leggett; directing the defendants Seeman and Leggett to correct their seniority lists so as to place the names of the plaintiffs on such lists prior to the names of the defendants numbered 10 through 103 for the trucking of such products of Leggett; restraining and enjoining the defendants O’Rourke and Duffy, officers of the defendant union, from taking any action which would give Seeman’s employees seniority superior to the seniority of the plaintiffs in the handling of Leggett’s merchandise and from taking any action contrary to the rights of the plaintiffs.
Defendants Seeman and Leggett cross-move for an order confirming the award of the arbitrator dated July 23, 1959 and upon such confirmation dismissing the complaint pursuant to subdivision 4 of rule 107 of the Rules of Civil Practice on the ground that there is an existing final judgment of a court of competent jurisdiction, or in the alternative, pursuant to section 1451 of the Civil Practice Act, for an order staying the action until arbitration has been had. Defendants O’Rourke and Duffy, individually and as officers of Local No. 282 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers, cross-move for an order dismissing the complaint on the ground that the plaintiffs have failed to exhaust the remedies available within the union, or staying the action pursuant to section 1451 of the Civil Practice Act until arbitration has been had.
*658 The facts which are set forth in great detail in the various papers before the court are essentially as follows:
Prior to December 16, 1957 the plaintiffs were employees of the defendant Leggett, a wholesale dealer of food and food products, as drivers and helpers, the terms of which employment were covered by a standard grocery contract entered into with the defendant union as the bargaining agent of the plaintiffs. Pursuant to section 4 of the contract Leggett established and maintained a seniority list of its employees requiring Leggett to assign work in the order of their seniority up to 72 of such employees before it could employ additional drivers or helpers or hire independent truckers. During this time Leggett had its own fleet of trucks upon which the plaintiffs were employed. In the latter part of 1957 and apparently as an economy measure, Leggett discontinued its own trucking operations and had its merchandise delivered by the defendant’s independent trucking companies and on December 16, 1957 and October 14, 1958 Leggett, the defendant union and the defendant’s independent trucking companies entered into agreements whereby the Leggett drivers and helpers, the plaintiffs herein, would continue to handle the distribution of Leggett’s merchandise under the supervision of the defendant trucking companies.
As part of the agreements and in order to protect the seniority, wages and working conditions of the drivers and helpers, the parties further stipulated that the defendant union would enter into standard grocery agreements with the trucking companies “ for the account of Leggett ”, that the drivers and helpers of Leggett appearing on the seniority list be employed by the defendant companies with Leggett guaranteeing such employees the payment of their wages, the performance of all working conditions and benefits provided in the grocery agreements and that Leggett would pay or provide for all the benefits and make payments in the union welfare and pension trust funds required by the grocery agreements.
On March 20,1959 the defendant geeman, also engaged in the wholesale grocery business, acquired all of the issued and outstanding shares of the capital stock of Leggett. Since that date Leggett has continued in the wholesale grocery business as a wholly owned subsidiary of geeman. However, there was no merger of the companies and the corporate entity of Leggett is still being maintained; the trade name and brand name of Leggett is still in use and deliveries are being made and billed in the Leggett name and both companies are being operated as completely independent enterprises although operating out of the same warehouse.
*659 Prior to the acquisition of the Leggett stock, Seeman and the defendant union had also entered into a collective bargaining grocery agreement similar in all respects to the Leggett contract, except that Seeman guaranteed work to 94 of its drivers and helpers before it could employ additional drivers. It also maintained a list of employees known as “ extras ” arranged in the order of their seniority, who were employed by Seeman when it required drivers and helpers in addition to those on the guaranteed list.
As could be foreseen and in the natural course of events, discontent and friction arose between the Leggett and Seeman drivers and helpers as to their seniority rights under their respective guaranteed lists. In an effort to resolve the problems arising from such acquisition, a meeting was called and attended by the representatives of the defendant union, the employers and by the shop stewards representing the Seeman and Leggett groups who were all members of the defendant union. As a result, it was agreed that the 94 men on the Seeman “ guaranteed list” would continue to receive first preference as to work assignments in the order of their seniority. The drivers and helpers of the independent truckers who made the Leggett deliveries would become Seeman employees and would receive preference according to their seniority after the 94 Seeman regulars had been assigned and the Seeman “ extras ” would be assigned work only after the Seeman regulars and Leggett regulars had been assigned. This arrangement naturally met with the disfavor of the Seemen “ extras ” who commenced an action in the Supreme Court, Bronx County, naming as defendants a majority of the plaintiffs herein, Local 282 and Seeman. The action was then discontinued and by stipulation the matter was referred to arbitration. Both groups of employees were represented at the hearing by Local 282 and by counsel of their own choosing. The arbitrator’s decision and award substantially sustained the arrangement which had been agreed to by Local 282 and Seeman. The Seeman “ guaranted list” of 94 remained unchanged while the former Leggett group received preference in work assignment over the Seeman “ extras.” However, the plaintiffs, the former Leggett employees, have become dissatisfied with the arrangement made and so determined by the arbitrator, contending that the defendants Seeman, Leggett and Local 282 have given Seeman employees seniority and priority over the plaintiffs with respect to employment even though most of the grocery business of Seeman and Leggett is being taken care of in the Leggett name and that a great number of the plaintiffs have many more years of seniority *660 than a great number of the Seeman employees. In addition, that Seeman is employing independent truckers using their own drivers and helpers.
Stemming from this dissatisfaction and with the hope of resolving the difficulties, Seeman and Local 282 have submitted the following issue for further arbitration: “ Should the number of men on the 1 guaranteed list ’ (under the Seeman contract) which is now fixed in section 4 of the union contract at 94 be increased, and if so, to what number? ” [Insertion within parenthesis mine.] Plaintiffs have not submitted to such arbitration even though their union is part of such proceeding.
As a result of all these differences, disputes and complaints the plaintiffs have instituted the instant action which is one for a declaratory judgment to have the court establish the rights of the plaintiffs to employment and to seniority over the defendant employees óf Seeman with respect to the trucking of Leggett products, or in the alternative to have one master seniority list established for Leggett and Seeman employees.
The cross motions having for their purpose the dismissal or staying of the plaintiffs’ action, the court under the circumstances will pass upon such applications in the first instance.
As to the cross motion of the defendants Leggett and Seeman, that phase seeking a confirmation of the arbitration award dated July 23, 1959 is granted on consent. However, the determination of the arbitrator and its confirmation does not, as these defendants contend, bar the plaintiffs from seeking relief on the theory that there is an existing final judgment. As clearly demonstrated by the papers, the action instituted by the Seeman “ extras ” was to obtain a determination that they had seniority and priority over the Leggett men and when the matter was submitted to arbitration that was the only issue. At no time in that proceeding or before the Supreme Court were the 94 regular Seeman employees defendants or parties. The only determination made by the arbitrator and confirmed by this court is that the Leggett men had vested rights in their jobs over the “ extras ” and were entitled to employment and preference over the “ extras.” There was no issue before the arbitrator as to the respective seniority rights between the regular Seeman employees who are the defendants herein and the Leggett men who are the plaintiffs and there has been no litigation of this issue.
Accordingly, the defendants’ contention that the plaintiffs are barred from seeking relief is of no legal consequence or weight and that phase of their motion is denied. Nor will the *661 issue presently being arbitrated be determinative of the issues raised by the plaintiffs in this action. It cannot be disputed that Leggett, despite the acquisition of its stock by Seernan, has not gone out of business as an independent enterprise and is still having its merchandise and goods delivered to its customers. It further cannot be disputed that Leggett, for the express purpose of protecting the seniority standing, wages and working conditions of its employees, when it decided to have independent trucking concerns make its deliveries, conditioned such agreement upon the employment of its drivers and helpers on the basis of one over-all seniority list as established while in the direct service of Leggett and that such employment would be in accordance with the terms and conditions provided for in Leggett’s collective agreement with the union. The effect of this supplemental agreement was to continue Leggett as the true employer of the drivers and helpers employed in its trucking service even though they were now on the payroll of the independent truckers. Seernan’s acquisition of the stock of Leggett did not change or alter this situation. These agreements are still outstanding and enforeible. The contract presently being passed upon by arbitration is the agreement of Seernan and the union. It does not necessarily follow that whether the guaranteed list in the Seernan contract is increased in accordance with the stipulated issue of arbitration it will make the plaintiffs the beneficiaries of such increase, as such determination would merely provide for an increase with no stipulation directing the plaintiffs to be included. The determination would merely be binding between Seernan and the union and affect only Seernan employees.
While the issues in this action were not passed upon by the first arbitration and will not be passed upon in the pending arbitration, it is the court’s view that plaintiffs’ action should be stayed, as such issues must be presented to arbitration in accordance with the contracts entered into between Leggett, the union and the independent trucking companies.
Section 14 of such contract relating to arbitration reads as follows:
Arbitration
“ (a) Should any dispute arise between the Employer and the employee or the Employer and the Union concerning the application or interpretation of any provision of this agreement or concerning any term or condition of employment under this agreement, the representatives of the Employer and the representatives of the Union shall attempt to adjust the con *662 troversy between themselves. In the event they are unable to adjust same, the dispute shall, within two (2) days after the request of either party, be submitted for arbitration to a mutually acceptable arbitrator whose decision shall be final and binding upon the parties hereof. During the period of arbitration there shall be no strikes or lockouts by either party to this agreement.
“ (b) The discharged employee shall have the right to be present at the proceedings. If it is found that he has been wrongfully discharged, he shall be reinstated with back pay for time lost.”
Where it is shown that an agreement to arbitrate exists and broad and comprehensive language is employed in the arbitration clause, it is implicit therein that the parties intended to reserve for arbitration any controversies involving the interpretation or application of the provisions of the agreement or of any breach thereof for the arbitrator and not the courts (Matter of Acme Backing Corp. [Dist. 65, Distributive, Processing & Off. Workers of America], 2 A D 2d 61, affd. 2 N Y 2d 963; Matter of Carey [Westinghouse Elec.], 6 A D 2d 582). Whether Leggett and the independent truckers must continue to hire the plaintiffs, where the products delivered and sold are those of Leggett, is one for the arbitrators and not the courts.
Accordingly, the latter phase of the defendants’ cross motion requesting the alternative relief is granted.
With respect to the union’s cross motion, it is contended by the union that before plaintiffs may institute any action they must first exhaust the remedies available within the union and in any event should be stayed pending a processing of the grievance before arbitration. Despite any disaffirmation on the part of the attorneys for the plaintiffs, the plaintiffs in this action have charged the defendant officers of the union with a dereliction of their duties and improper actions resulting in a loss of employment on the plaintiffs’ part.
One of the provisions of the international constitution provides (art. XVIII, § 14) that any member against whom adverse rulings or decisions have been rendered or who claims to be aggrieved, should be obliged to exhaust all remedies provided for in the constitution, etc. It has been held that where timely and adequate relief is provided, an aggrieved member of a union must first exhaust that organization’s remedies before seeking redress from a court, unless such members establish that continued efforts within the union would be futile in order to obtain such relief (Madden v. Atkins, 4 N Y 2d 283; Browne v. *663 Hibbetz, 290 N. Y. 459). TMs the plaintiffs have failed to establish.
As heretofore indicated, plaintiffs’ remedy lies within the ambit of the arbitration clause which clearly provides that the representatives of the employer and representatives of the union should attempt to adjust the controversy between themselves and in the event they are unable to do so the dispute should be submitted to arbitration. While the union has attempted to resolve plaintiffs’ difficulties with Seeman, it has not pursued its remedies with Leggett and the independent truckers under their contract. By the very nature of the contract between the union and Leggett, etc., the plaintiffs being members of the union bound themselves by the agreement entered on their behalf and under which agreement only the union could avail itself of the arbitration procedure, since by its terms that right is granted only to the union and the employer. Plaintiffs, having entrusted their rights to their union, must exhaust their remedies by requesting the union to proceed to arbitration under the contract (Soto v. Lenscraft Opt. Corp., 7 A D 2d 1; Parker v. Borock, 5 N Y 2d 156). This the plaintiffs apparently have failed to do.
Under the circumstances, the defendant union’s motion to stay the action pending arbitration is granted. The action having been stayed, plaintiffs’ motion is denied. Settle order on notice.